June D. Coleman - 191890
Jennifer S. Gregory - 228593
ELLIS, COLEMAN, POIRIER, LAVOIE,
  & STEINHEIMER LLP
555 University Avenue, Suite 200 East
Sacramento, CA 95825
Tel: (916) 283-8820
Fax: (916) 283-8821
jcoleman@ecplslaw.com
jgregory@ecplslaw.com

Attorneys for Defendants PATENAUDE & FELIX and RAYMOND ALCIDE PATENAUDE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MARIA CONCEICAO SILVA, on behalf of herself and others similrly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>PATENAUDE & FELIX, A PROFESSIONAL CORPORATION, a California corporation; and RAYMOND ALCIDE PATENAUDE, individually and in his official capacity,<br><br>        Defendants. | Case No.:  C08-03019 JW PVT<br><br>**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>DATE:              May 3, 2010<br>TIME:              9:00 a.m.<br>COURTROOM:    8 |

# TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION .................................................................................................1

II.   FACTUAL BACKGROUND ...............................................................................2

III.  REASONABILITY OF FEES SOUGHT .........................................................4

    A.   Standard for Determining Attorneys' Fees ...............................................4

    B.   Plaintiff's Lack of Success Should Be Taken into Consideration ..............5

    C.   Plaintiff Counsel's Claimed Hours Are Not Reasonable ...........................6

        1.   Ms. Silva, Through Her Counsel, Files a Lawsuit Using a Boilerplate Complaint..........................................................................8

        2.   Both Counsel Draft and Review Discovery ........................................8

        3.   Plaintiff's Counsel Files a "Cookie Cutter" Motion for Class Certification.........9

        4.   Mr. Bragg and Mr. Schwinn Engaged in Duplicative Work.................9

        5.   The Parties Settle the Case, But Plaintiff's Counsel Continues to Rack Up Attorneys' Fees ..................................................................9

        6.   Plaintiff's Counsel Seeks to Be Reimbursed for Overhead Costs and Interoffice Communications........................................................10

        7.   Plaintiff Counsel's Suspicious Billings Justify an Across-the-Board Cut of Their Claimed Fees .................................................11

IV.  THE $465 AND $325 HOURLY RATES SOUGHT ARE NOT THE REASONABLE MARKET RATE FOR SIMILAR SERVICES ...........................................12

    A.   The Determination of a Reasonable Fee Is Linked to the Facts and Circumstances of the Underlying Litigation .........................................................................12

        1.   Using the Altergott Analysis, Plaintiff's Request is Unjustified ........12

        2.   Using the Savino Court Analysis, an Award of Less Than $6,000 Is Reasonable and Justified ...............................................................13

        3.   The Requested Rates of $465 and $325 Are Not Reasonable and Must Be Reduced to No More Than $275 per Hour.............................15

        4.   The Reasonable Market Rate Should Be Determined by the Complexity of the Specific Case, the Legal Services Provided, and the Outcome of the Case ...................................................................16

        5.   Plaintiff's Counsel's Own Declarations Fail to Provide Competent Support for Their Requested Hourly Rates........................................19

            a.   Mr. Schwinn's Declaration Cites to Cases Where There Was No Opposition to His Requested Rate ...........................19

            b.   Mr. Bragg's Declaration Does Not Cite to Evidence Which Supports His Requested Rate ...............................................20

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

c.   The Defenbaugh v. JBC & Assocs. Case Does Not Provide
Guidance as to the Reasonable Market Rate...........................................20

6.   The Only Relevant, Competent Evidence Proferred Establishes
That the Reasonable Market Rate for This Case Is in the Range
of $250-$275 Per Hour.......................................................................................23

V.   CONCLUSION   .......................................................................................................23

**TABLE OF AUTHORITIES**

**PAGE**

**Cases**

*Altergott v. Modern Collection Techs., Inc.* (N.D. Ill. 1994) 864 F.Supp. 778..............................12, 13

*Aragon v. Patenaude & Felix, P.C.* Complaint, case no. C07-04403-JW ......................................7

*Bankston v. Patenaude & Felix*, case no. C07-03396-JW-JVT ............................................1, 2, 7

*Blum v. Stenson* (1984) 465 U.S. 886 ...............................................................................1, 16

*Burnett v. Bottoms* (D. Ariz. 2006) 2006 WL 1806024 ..................................................6

*Campos v. Western Dental Services, Inc.* (N.D. Cal. 2007) 2007 WL 2050976 ...................................20

*Carroll v. Wolpoff & Abramson* (4th Cir. 1995) 53 F.3d 626.............................................12

*Clark v. Quick Collect, Inc.* (D. Ore. 2006) 2006 WL 572157 ..............................................16

*Cooper v. Sunshine Recoveries, Inc.* (S.D.N.Y. 2001) 2001 WL 740765 ......................................16, 23

*Cornett v. Capital Management Servs., Inc.* (W.D.N.Y. 2006) 2006 WL 2270346.......................6, 8, 16

*Cunningham v. County of Los Angeles* (9th Cir. 1988) 879 F. 481 ...........................................5

*Davis v. City and County of San Francisco* (9th Cit. 1992) 976 F.2d 1536 ............................10

*Defenbaugh v. JBC & Assocs, Inc.* (N.D. Cal. 2004) 2004 WL 1874978 ..................................24

*Dowling v. Kucker, Kraus & Bruh, LLP* (S.D.N.Y. 2005) 2005 WL 1337442 ...................................16

*Ferland v. Conrad Credit Corp.* (9th Cir. 2001) 244 F.3d 1145 ......................................5, 11

*Finkelstein v. Bergna* (N.D. Cal. 1992) 804 F.Supp. 1235 ..................................1, 17, 18, 19, 21, 22, 23

*Guam Soc. of Obstetricians & Gynecologists v. ADA* (9th Cir. 1996) 100 F.3d 691 ...........................12

*Hagan v. MRS Assocs.* (E.D. La. 2001) 2001 WL 531119 ...............................................16, 23, 24

*Hearn v. Barnhart* (N.D. Cal. 2003) 262 F.Supp.2d 1033.................................................21, 22

*Hensley v. Eckerhart* (1983) 461 U.S. 424 ........................................................4, 5, 10

*Hopwood v. State of Texas* (5th Cir. 2000) 236 F.3d 256 ...............................................19

*Ilick v. Miller* (D. Nev. 1999) 68 F.Supp.2d 1169 .......................................................24

*In re Martinez* (S.D. Fla. Bkrptcy 2001) 266 B.R. 523 ..............................................15, 23

*In re Quantum Health Resources, Inc.* (C.D. Cal. 1997) 962 F.Supp. 1254 ........................................20

*Johnson v. Credit Int'l, Inc.* (N.D. Cal. 2005) 2005 WL 2401890 ........................................6, 18

*Jordan v. Multnomah* County (9th Cir. 1987) 815 F.2d 1258 ...........................................22, 23

*Kerr v. Screen Extras Guild, Inc.* (9th Cir. 1975) 526 F.2d 69 ..............................................4

*Kirsch v. Fleet St. Ltd.* (2d Cir. 1988) 148 F.3d 149.........................................................5, 11

*Lee v. Thomas & Thomas* (6th Cir. 1997) 109 F.3d 302.................................................2, 5

*Maddox v. Martin Co., LLC* (S.D. Ohio 2006) 2006 WL 1735394 .......................................16

-i-

*Mares v. Credit Bureau of Raton* (10th Cir. 1986) 801 F.2d 1197 ............................................. 15

*Morales v. City of San Rafael* (9th Cir. 1996) 96 F.3d 359 ...................................................... 4

*Owens v. Erica Brachfeld, APC* (N.D. Cal. 2008) 2008 WL 5130619 ................................. 6, 19

*Palmer v. Far West* (N.D. Cal. 2008) 2008 WL 5397140 ......................................................... 20

*Savino v. Computer Credit, Inc.* (E.D.N.Y. 1999) 71 F.Supp.2d 173 ........................... 5, 11, 13, 14, 15

*Shapiro v. Credit Protection Association, Inc.* (S.D.N.Y. 1999) 53 F.Supp.2d 626 ............................ 15

*Sparkman v. Zwicker & Associates, P.C.* (E.D.N.Y. 2006) 2006 WL 463939 ...................................... 16

*Tong v. Capital Management Services Group, Inc.* (N.D. Cal. 2008) 2008 WL 171035 .................. 7, 20

*Villano v. City of Boynton Beach* (11th Cir. 2001) 254 F.3d 1302 ........................................... 4, 5

*Wallat v. Roush*, case no. 05-cv-03518-JF, September 21, 2008, slip op. ................................. 20

*Webb v. Board of Educ.* (1985) 471 U.S. 234 ............................................................. 12

*Widrig v. Apfel* (9th Cir. 1998) 140 F.3d 1207 ......................................................... 22, 23

*Yahoo!, Inc. v. Net Games, Inc.* (N.D. Cal. 2004) 329 F. Supp. 2d 1179 ................................ 15, 23

**Statutes**

15 U.S.C. § 1692g(a)(4) ......................................................................... 2

15 U.S.C. § 1692g(a)(5) ......................................................................... 2

15 U.S.C. § 1692k(a) ............................................................................ 3

# I.     INTRODUCTION

Courts recognize that a simple, non-complex case such as the instant case, with little to no activity, justified a "different" fee award than a more complex case.  (See *Finkelstein v. Bergna* (N.D. Cal. 1992) 804 F.Supp. 1235, 1243-45.)  And when courts have recognized this "difference" in fee awards, it has not been because the calculation process or analysis methodology is different.  Rather, the "difference" is found in both the hours and the hourly rate, which should reflect the work performed and the complexity and difficulty of the work performed.  (*Id*.)  Moreover, courts also recognize that it is difficult to determine a "market rate," especially in fee shifting case where plaintiff attorneys are never paid an hourly rate by the "market."  (See *Blum v. Stenson* (1984) 465 U.S. 886, 895, fn. 11.)

In recognition of these principles, it becomes clear that Plaintiff's request for a total of $25,891.27 in fees and in costs is excessive and unreasonable.  This expensive sum was incurred even though Plaintiff's attorneys had previously, repeatedly litigated the very same legal issues for several years in other cases.  What is more, the very same plaintiff's counsel litigated the very same case/legal issues against the very same defendants with the same judge as the previous case, where the previous case was an individual case.  (See *Bankston v. Patenaude & Felix*, case no. C07-03396-JW-JVT, slip op., attached to Coleman Decl., as Exhibit 36.)  Furthermore, the pleadings and discovery requests in this case are virtual carbon copies of other pleadings and discovery requests routinely used by Plaintiff's counsel.  (Coleman Decl., ¶¶12-14, 16; Compare Exhibit 3 with 4, 5, 6; Exhibits 8-10 with 11-16; Exhibits 17 and 18 with 19-21; and Plaintiff's Motion for Attorneys' Fees with Exhibits 23-29.)

Moreover, despite the nearly $26,000 fee request, very little legal work was actually done in this case.  Plaintiff propounded discovery, and prepared and filed only two form motions, one for class certification and another for attorneys' fees.   Plaintiff apparently prepared an application for compliance with subpoena, but never filed it.  Liability in this case was never disputed or contested, and Plaintiff's counsel did not have to aggressively, or even assertively, prosecute this case.  This case was a "cookie cutter" of other cases handled by Plaintiff's counsel in the past wherein there were no actual damages and Defendant admitted liability, leaving only a question of statutory damages. Despite this, Plaintiff's counsel now seeks a "windfall." (See *Lee v. Thomas & Thomas* (6th Cir. 1997)

-1-

1   109 F.3d 302, 306-07 ["'a reasonable fee' as we have observed elsewhere, 'is one that is adequate to

2   attract competent counsel, but [does] not produce windfalls to attorneys'"].)[1]

3        What is more, Plaintiff's counsel indicated twice in their moving papers that they would submit

4   additional costs and attorneys' fees within seven (7) days of the completion of their Motion, p. 6:6-7),

5   but they failed to do so.  Defendants are now hampered in responding to Plaintiff's counsel's fee

6   motion without having the supplemental briefing in support of that additional request.

7        For the reasons set forth herein, Defendants PATENAUDE & FELIX and RAYMOND

8   ALCIDE PATENAUDE ("Defendants") submits that $25,891.27 is not a reasonable fee for the

9   prosecution of this lawsuit.  This Court should award no more than half of Plaintiff counsel's request,

10  or no more than $3,794.99, in this non-heavily litigated action.

11                        **II.    FACTUAL BACKGROUND**

12       On June 28, 2007, Attorney Schwinn filed a case on behalf of Plaintiff Bankston against

13  Patenaude & Felix and Mr. Patenaude individually, which was assigned to Judge Ware of the Northern

14  District of California.  (*Bankston v. Patenaude & Felix*, case no. C07-03396-JW-JVT, slip op., Exhibit

15  A to Coleman Decl.)  The case alleged that Defendants Patenaude & Felix and Mr. Patenaude failed to

16  include FDCPA mandated disclosures in the initial letter sent to Ms. Bankston.  Specifically, the letter

17  sent to Ms. Bankston failed to include the phrase "in writing" as required by the FDCPA, 15 U.S.C. §

18  1692g(a)(4)-(5).  Patenaude & Felix and Mr. Patenaude argued that the letter complied with the intent

19  of the statute, and that Patenaude & Felix would have honored an oral request and a written request,

20  thereby giving Ms. Bankston more rights than those allowed by statute.  (*Id.* at pp. 1:18-2:3, 3:7-5:8.)

21  Judge Ware held that such was a violation of the FDCPA, and found that this violation was not

22  egregious, persistent, or pervasive, especially in light of the fact that Patenaude & Felix was motivated

23  to omit the phrase "in writing" by a desire to provide greater protection to debtors than required by

24  law.  Judge Ware held that Plaintiff Bankston was entitled to $250 in statutory damages out of the

25

26  [1] Further, Plaintiff's counsel states that it never received a response from defense counsel regarding its
    time and expense records.  This is not true.  On February 24, 2010, defense counsel wrote to Plaintiff's
27  counsel and explained why the claimed fees ought to be reduced, and made a settlement offer
    regarding the attorneys' fees at issue. (Coleman Decl., ¶40.)  Plaintiff counsel's response was to reject
28  the offer. (*Id.*)

1   maximum $1,000 statutory damages.  (See *Bankston*, Exhibit 36, p. 5:11-23; <u>see also</u> 15 U.S. C. §

2   1692k(a).)

3          Less than a week after Judge Ware's decision, on June 19, 2008, Attorney Schwinn filed the

4   exact same lawsuit alleging the same basis for a violation of the FDCPA, against the same defendants

5   on behalf of a new plaintiff, Ms. Silva.  This case was a class action and it was assigned to the same

6   judge, Judge Ware.   Despite the experience Mr. Schwinn has with these allegations and these

7   defendants, Attorney Bragg sought to be admitted *pro hac vice* in August, which was granted. During

8   the next approximately 11 months, plaintiff's counsel did the following legal work:

9          1.    Entered into a stipulated protective order drafted by defense counsel;
           2.    Prepared an individual case management conference statement;
10          3.    Served three third party subpoenas on businesses to gather information regarding
                 defendants' net worth;
11          4.    Telephoned court appointed mediator regarding mediation scheduling;
           5.    Prepared joint request to extend deadline to conduct mediation;
12          6.    Propounded cookie-cutter discovery requests
           7.    Filed an unopposed Motion for Class Certification;
13          8.    Prepared a Preliminary Pre-Trial Conference Statement
           9.    Provided additional information to the Court regarding class certification; and
14          10.   Agreed to a class wide settlement, where defense counsel drafted the settlement
                 documents, the preliminary class approval moving papers, and the final class approval
15                moving papers.

16         In September 2008, Mr. Bragg inquired as to net worth for purposes of settlement.  In October

17   2008, defense counsel provided the class size to Mr. Bragg and asked for the parties to enter into a

18   protective order so that Defendants' net worth information could be provided.  (Coleman Decl., ¶42.)

19   Defense counsel also offered the net worth of the law firm, which was negative.  (*Id.*)  The protective

20   order was agreed to and filed in November 2008, and the net worth information regarding the law firm

21   was provided, along with an offer to resolve the case along the same terms as the judgment in

22   *Bankston*.  (*Id.*)  Plaintiff conducted third party discovery of the law firm's bank accounts, including

23   trust accounts, and ineffective[2] subpoenas to the Defendants' accountant.  (*Id.*)  Defendants extended

24   another offer to resolve the case on a class-wide basis under the terms of the *Bankston* judgment- 25%

25   of statutory damages. (*Id.*)  When this was not accepted, Defendants extended a Rule 68 offer with the

26   same terms.  (*Id.*)  Plaintiff countered with a settlement offer that included approximately $38,000 for

27   _____

28   [2]  The subpoena did not name the proper party to obtain the accounting records for the firm and Mr.
     Patenaude individually.

the class and $2,000 for Plaintiff Silva.  (*Id.*)  Ultimately, the parties settled for $8,250 to the class and $1,125 to Plaintiff Silva.  (*Id.*)  Therefore, in terms of success, Plaintiff recovered 56.5% of what she sought on behalf of herself and 22% of what she sought on behalf of the class.  (*Id.*)  In total, the total settlement was 23% of what Plaintiff Silva initially sought.  (*Id.*)

Given the level of legal services that were provided, the non-complex nature of the case, the previous litigation filed against the same defendants, the request for nearly $26,000 in attorneys' fees is unreasonable and not supported by evidence.[3]  The Court should reduce the fee award to be commensurate with the lack of success by Plaintiff.  A reduction of 70% is more than reasonable.

## III.     REASONABILITY OF FEES SOUGHT

**A.     Standard for Determining Attorneys' Fees.**

Courts determine attorneys' fees using the lodestar method "by multiplying the number of hours the prevailing party reasonable expended on the litigation by a reasonable hourly rate." (*Morales v. City of San Rafael* (9th Cir. 1996) 96 F.3d 359, 363.)  In determining a reasonable number of hours, the Court may reduce the hours claims, for example, where documentation of the hours is inadequate; if the case was overstaffed and the hours are duplicated; and if the hours expended are deemed excessive or otherwise unnecessary.  (*Hensley v. Eckerhart* (1983) 461 U.S. 424, 433-434.)

Factors to consider in awarding fees include, but are not limited to: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, and (3) the skill requisite to perform the legal service properly.  (*Kerr v. Screen Extras Guild, Inc.* (9th Cir. 1975) 526 F.2d 69-70, cert denied, 425 U.S. 951 (1976).)  The Eleventh Circuit has held that upon a determination of the appropriate award of attorney's fees, "the most critical factor is the degree of success obtained." (*Villano v. City of Boynton Beach* (11th Cir. 2001) 254 F.3d 1302, 1305 (quoting *Hensley v. Eckerhart* (1983) 461 U.S. 424, 436 [dealing with statutory fees under 42 U.S.C. § 1988]).)  The court then assesses whether it is necessary to adjust the presumptively reasonable lodestar figure upwards or downwards on the basis of factors that are not already subsumed in the initial lodestar calculation.

[3] After the filing of Plaintiffs' fee motion, Defendants made an offer to settle the claim for attorneys' fees which amounted to the value of the *legitimate* hours claimed.  Plaintiff's counsel flatly rejected that offer in late February 2010.

1  (*Cunningham v. County of Los Angeles* (9th Cir. 1988) 879 F. 481, 487-89.)  A plaintiff bears the

2  burden of submitting evidence justifying the hours claims to have been expended.  (*Hensley*, *supra*,

3  461 U.S. at 433.)

4       And, an entry by entry analysis of the fees requested is not necessary to determine the lodestar.

5  Rather than weighing the reasonableness of each individual time entry, the court may exclude

6  excessive and unreasonable hours from a fee request by making an **across-the-board reduction in the**

7  **amount of hours**.  (*Kirsch v. Fleet St. Ltd.* (2d Cir. 1988) 148 F.3d 149, 173 (cited in *Savino v.*

8  *Computer Credit, Inc.* (E.D.N.Y. 1999) 71 F.Supp.2d 173, an FDCPA case); see also *Ferland v.*

9  *Conrad Credit Corp.* (9th Cir. 2001) 244 F.3d 1145, 1150-51 [flat percentage reduction of fee request

10  permissible if based on expressed reasons].)  Such reduction in Mr. Schwinn and Mr. Bragg's hours is

11  justified in this case, as explained below.

12       Such an across-the-board reduction was approved in *Lee v. Thomas & Thomas*, *supra*.  There,

13  the plaintiff's attorney in an FDCPA case refused to disclose the amount of attorneys' fees incurred

14  during settlement negotiations, and the case could not therefore be settled.  The District Court found

15  that the continued prosecution of the case by plaintiff's attorney was driven by the fees he hoped to be

16  awarded.  The court characterized this continued prosecution of the case as a form of "economic

17  waste."  (*Lee*, *supra*, 109 F.3d at 306 [affirming reduction of the $12,759 requested fees to $1,106.85].)

18  **B.**    **Plaintiff's Lack of Success Should Be Taken into Consideration.**

19       As stated above, the Eleventh Circuit has held that upon a determination of the appropriate

20  award of attorney's fees, "the most critical factor is the degree of success obtained."  (*Villano v. City of*

21  *Boynton Beach* (11th Cir. 2001) 254 F.3d 1302, 1305, quoting *Hensley v. Eckerhart* (1983) 461 U.S.

22  424, 436 [dealing with statutory fees under 42 U.S.C. § 1988].)  Plaintiff also cites *Hensley* for the

23  proposition that "[w]hen a plaintiff has obtained excellent results, his attorney should recover a full

24  compensatory fee."  (Motion, p. 7, ll. 21-22.)

25       However, here, Plaintiff received less than half of what she claimed to be entitled to.  Thus, it is

26  unclear how Plaintiff's counsel can justify the suggestion that Plaintiff obtained "excellent results."

27  Aware of this dilemma, Plaintiff counsel's moving papers also suggest that Plaintiff's counsel should

28  not be penalized for responding to Defendant's defense.  (Motion, p. 8, ll. 3-5.)  However, Defendants

-5-

barely put up a defense to begin with, admitting liability!  From the very inception of the case, Defendants acknowledged liability under the statute, and focused their litigation in this case towards damages.  For instance, Defendants joined in Plaintiff's motion for class certification.  Defendants repeatedly offered to resolve the case on the same percentage of statutory damages as was awarded in *Bankston*.  Ultimately, the resolution was only 22% of what Plaintiff sought on behalf of the class and 37.5% of what the Plaintiff sought on behalf of herself, individually.  Thus, the fee award should be reduced to reflect the success that Plaintiff had in this case.

Plaintiff's counsel cites to several cases for the proposition that large fee awards are granted in cases where the damages obtained were nominal.  Defendants do not argue that the nominal settlement dollars should lead the Court to reduce the fee award; Defendants do argue that low recovery as compared to the amount requested evidences a lack of success that should cause the Court to reduce the fee award.   Therefore, Plaintiff's argument is not applicable.

## C.    Plaintiff Counsel's Claimed Hours Are Not Reasonable.

Courts have repeatedly recognized that when an attorney uses form pleadings, the hours spent drafting the pleadings, discovery, and even form letters should be minimal.  In *Owens v. Erica Brachfeld, APC* (N.D. Cal. 2008) 2008 WL 5130619, a case cited by Mr. Schwinn to support his hourly rate, the Court addressed a fee motion, noting that were a number of similarities in the preparation of pleadings in that case, with other cases.

> In noting these similarities, the Court in no way intend[ed] to criticize Plaintiff's counsel for choosing not to reinvent the wheel every time a fair debt collection action is brought.  The similarities do, however, suggest that the number of hours spent litigating this largely unopposed, "cookiecutter" action is somewhat excessive.

(*Id.* at *2.)

Accordingly, the Court awarded half of the hours claimed for a motion for summary judgment and the fee motion itself.  (See also *Cornett v. Capital Management Servs., Inc.* (W.D.N.Y. 2006) 2006 WL 2270346, *2 [hours to prepare form complaint used in many FDCPA actions brought by counsel reduced to .5 hours from 1.5 hours]; *Burnett v. Bottoms* (D. Ariz. 2006) 2006 WL 1806024, *5 [appropriate to cut hours when counsel has previously litigated similar case and approving of an hourly rate of $250 per hour].); *Johnson v. Credit Int'l, Inc.* (N.D. Cal. 2005) 2005 WL 2401890, *4 [cutting

-6-

1   hours 60% when Mr. Bragg sought unreasonable hours for litigating cases identical to previous cases

2   he had litigated], aff'd in part 257 Fed.Appx. 8 (9th Cir. 2007) [vacated as to travel issues] (not

3   selected for publication).)

4        In *Tong v. Capital Management Services Group, Inc.* (N.D. Cal. 2008) 2008 WL 171035, *1-2,

5   the Court did not quarrel with Mr. Schwinn's billing rate of $300 per hour based upon his experience

6   in FDCPA cases. The Court did, however, take issue with the number of hours spent by Mr. Schwinn,

7   as opposed to a law clerk or associate, on the case:

> However, given the relatively simple nature of the case, most of the work
> could have been delegated to the law clerk. The court believes that even
> if defense counsel was difficult, plaintiff's counsel, with a focus on
> reasonableness, could have resolved the case with [half the amount of]
> work.
>
> …
>
> The court has also considered that this case involved a technical or *de
> minimis* violation of the FDCPA. "For *de minimis* or technical violations,
> some courts refuse to award statutory damages." *Lester E. Cox Med. Ctr.
> v. Huntsman*, 408 F.3d 989, 994 (citing *Pipiles v. Credit Bureau of
> Lockport, Inc.*, 886 F.2d 22, 28 (2d Cir. 1989) (determining that the
> nature of defendant's noncompliance did not warrant statutory
> damages)); *Fasten v. Zager*, 49 F. Supp. 2d 144, 150 (E.D.N.Y. 1999)
> (holding the defendant's noncompliance was minor and plaintiff was not
> entitled to statutory damages).
>
> There appears to have been no attempt to settle the case prior to the filing
> of the complaint … The *chronology* of events raises the question of
> whether plaintiff's counsel was more interested in fees than he was with
> recovery for his client.
>
> …
>
> The reduction of hours from those requested is based upon the court's
> judgment of what hours would have been necessary to expend to resolve
> the case if counsel had reasonably focused *on* that agenda. The court
> questions whether it should award fees at all given the facts of the case
> and the technical violation involved.

24   (*Tong, supra*, 2008 WL 171035, *1-2.)

25        Against this backdrop, this case stands as a stark example of the use of form pleadings, etc.

26   Plaintiff's Counsel, Fred Schwinn, litigated this exact same issue against these exact same defendants

27   in front of this exact same judge. (*Bankston v. Patenaude & Felix*, case no. C07-03396-JW-JVT, slip

28   op., Exhibit 36; see also *Aragon v. Patenaude & Felix, P.C.* Complaint, case no. C07-04403-JW,

-7-

Exhibit 4.)  The pleadings and discovery are nearly identical.  Mr. Rand Bragg, the other Plaintiff's counsel, has litigated numerous cases with this very issue, on a class action basis.  (*Camacho v. Bridgeport Financial* Amended Complaint, case no. C04-478-CRB, Exhibit 37; *Guevarra v. Progressive Financial Services* Amended Complaint, case no. C05-03466-VRW, Exhibit 38.) Therefore, the hours requested should reflect the use of form pleadings and other documents.

### 1.     Ms. Silva, Through Her Counsel, Files a Lawsuit Using a Boilerplate Complaint.

Plaintiff's fee request seeks 2.5 hours for Mr. Schwinn and .8 hours for Mr. Bragg to prepare the Complaint – a Complaint that essentially needed the caption changed.  In light of the identical nature of the complaints used by these attorneys, the Court should award .5 hours to prepare the Complaint, following the logic of *Cornett, supra*, 2006 WL 2270346, *2.  (Compare *Camacho* Complaint, Exhibit 37; *Guevarra* Complaint, Exhibit 38; *Bankston* Complaint, Exhibit 4; *Aragon* Complaint, Exhibit 5; with *Silva* Complaint, Exhibit 3.) Since there is no need for an out of state attorney to draft the Complaint, the .5 hours should be credited to Mr. Schwinn.  Defendant thus proposes a reduction of .8 hours for Mr. Bragg, and 2.0 hours for Mr. Schwinn.

### 2.     Both Counsel Draft and Review Discovery.

Plaintiff seeks to be awarded fees for 2.8 hours for Mr. Schwinn's associate, Mr. Roulston, to propound discovery.  Plaintiff's counsel has repeatedly issued discovery in cases with identical allegations.  (Compare *Silva* discovery, Exhibits 8-10 with *Guevarra* discovery, Exhibits 11-13 and *Bankston* discovery, Exhibits 14-16.)  The preparation of standard discovery requests takes no longer than an hour.  Thus, Mr. Roulston's hours for preparing discovery requests should be reduced by 1.8.

Plaintiff's counsel also seeks fees for substantial time to review Defendants' simple discovery responses (Schwinn: 1.3 hours on March 4, 2009; Bragg:  .7 hours on March 5, 2009).  The review of Defendants' discovery responses should have taken no longer than .3 hours by one attorney, for a reduction of 1 hour by Mr. Schwinn and .7 hours for Mr. Bragg.

Further, Plaintiff's counsel drafted an application for compliance with a subpoena (Schwinn, 2.5 hours on May 20, 2009), but it was never filed, apparently because the subpoena was issued to the wrong business entity.  The Court should reduce Plaintiff's request by 2.5 hours.

/ / / /

-8-

3.     **Plaintiff's Counsel Files a "Cookie Cutter" Motion for Class Certification.**

Plaintiff seeks attorneys' fees for 6.1 hours by Mr. Schwinn and Mr. Bragg to prepare the Motion for Class Certification and its supporting documents between March 9, 2009, through May 1, 2009.  Like the Complaint in this case, Plaintiff's Motion for Class Certification was a standard, boilerplate motion used in other cases.  (Coleman Decl., ¶16; Exhibits 23-29.)  Very few details had to be changed.  Thus, Plaintiff counsel cannot reasonably argue it took them a total of 6.1 hours to prepare the motion.  Giving Plaintiff's counsel the benefit of the doubt, the motion should take no longer than 2 hours, with the majority of the work being done by the primary attorney, Mr. Schwinn. Defendant thus proposes a reduction of 2.0 hours for Mr. Bragg, and 2.1 hours for Mr. Schwinn.

4.     **Mr. Bragg and Mr. Schwinn Engaged in Duplicative Work.**

Plaintiff also seeks an award of attorneys' fees for duplicative work performed by Mr. Schwinn and Mr. Bragg.  (Coleman Decl., ¶19.) It is not reasonable or necessary for multiple attorneys to charge for duplicative work.

The Court should thus reduce Plaintiff's request by 1.9 hours for Mr. Bragg and .9 hours for Mr. Schwinn.

5.     **The Parties Settle the Case, But Plaintiff's Counsel Continues to Rack Up Attorneys' Fees.**

On or about June 18, 2009, the parties agreed to a settlement which included that Defendants would pay reasonable attorneys' fees to be determined by the Court if agreed upon by the parties, or if no agreement could be reached, in an amount determined by the Court.  (See Coleman Decl., ¶42.) After this, and as the case concluded, Plaintiff's counsel together spent another 10.3 hours on this case, not including the instant fee motion, which was apparently make shift work to increase fees.  This time should be reduced to considerably.

Further, Mr. Schwinn and Mr. Bragg represent that the attorneys' fees motion does not seek to be awarded compensation for hours spent on preparation of attorneys' fees motion, as a subsequent application will be submitted for this effort.  Plaintiff's counsel indicated *twice* in their moving papers that they would submit additional costs and attorneys fees within seven (7) days of the completion of their motion (Docket 52-2, p. 6, ll. 6-7; p. 9, ll. 8-9), but they failed to do so.

-9-

While this proposed procedure leaves Defendants with no opportunity to oppose this subsequent application, Mr. Bragg and Mr. Schwinn have actually sought an award of attorneys' fees for the preparation of a simple, form motion for attorneys' fees, identical to the other attorneys' fees motions that Mr. Bragg and Mr. Schwinn have filed. (Coleman Decl., ¶16; Exhibits 23-29.) Plaintiff's counsel should not be allowed to repeat the same boilerplate motion and be compensated for its original billed value each time.

### 6.   Plaintiff's Counsel Seeks to Be Reimbursed for Overhead Costs and Interoffice Communications.

Mr. Bragg seeks to be reimbursed for administrative time, including but not limited to reviewing the clerk's notice of his failure to file the Complaint electronically (.1 hours, 8/6/2008), and calendaring the dates from a scheduling order (.2 hours, 12/19/2008). Mr. Bragg's hours in this regard should be cut. (See *Davis v. City and County of San Francisco* (9th Cit. 1992) 976 F.2d 1536, 1543 [time spent on clerical activities and activities attributable to overhead are not recoverable].)

Plaintiff also seeks fees for unnecessary and excessive communications between co-counsel. "Counsel for the prevailing party should exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in a private practice is ethically obligated to exclude hours from his fee submission." (*Hensley v. Eckerhart* (1983) 461 U.S. 424, 433-34 (citations omitted).)  Lawyers in private practice are prohibited from charging their clients for two attorneys to send each other emails or talk to each other on the telephone. (Coleman Decl., ¶20.)  Similarly, Plaintiff should not be awarded fees for emails or telephone calls between Mr. Schwinn and Mr. Bragg.   It appears that Mr. Schwinn and Mr. Bragg recognize this because some of the communications between co-counsel are not "charged."   However, most of these communications between co-counsel are "charged."   And the number of hours spent on what amounts to "inter-office" communications is even greatly because Mr. Bragg primarily block bills reviewing or analyzing an issue with "inter-office communications." (Coleman Decl., ¶20.)  The Court should reduce the fee award by these hours:  .9 hours for Mr. Bragg, and 7.6 hours for Mr. Schwinn.

////

////

7.     **Plaintiff Counsel's Suspicious Billings Justify an Across-the-Board Cut of Their Claimed Fees.**

There are several other billing entries that require a closer inspection.  Curiously, on October 23, 2008, Mr. Schwinn billed .5 hours for reviewing an email from June Coleman regarding a protective order, which had already been forwarded and reviewed by both Mr. Bragg and Mr. Schwinn.  The Court should reduce the fee award by the fees for this .5 hours.

On January 20, 2009, Mr. Bragg also billed .2 hours for reviewing "ICC's supplemental discovery responses."  Defendants are not familiar with ICC and do not understand how its discovery responses have any bearing on this case.  The Court should reduce the fee award by the fees for this .2 hours.

Mr. Bragg's law clerk also spent .2 hours (11/18/2009) preparing billing records.  The need to prepare billing records after the fact gives rise to questions regarding the accuracy of those records.  What is more troubling, frankly, is that both Mr. Schwinn and Mr. Bragg will presumably bill for "preparing" their respective declarations that they have each filed in other cases. (Coleman Decl., ¶16; Exhibits 23-29.)   The fact that billing records must be "prepared" and created after the fact gives support to an across the board reduction in fees.

Additionally, Rand Bragg claims .4 hours on June 17, 2008, to review the *Bankston* decision, and Fred Schwinn claims .1 hours on June 13, 2008, which should be attributable to the *Bankston* case, and not recoverable in this case.  These hours should not be included in the fee award calculation.  These bizarre entries, in total, require at least an additional reduction of .6 hours for Mr. Schwinn, and .2 hours for Mr. Bragg's law clerk, and .6 hours for Rand Bragg.

Nevertheless, ***these multiple instances of meritless entries, as well as those discussed in more detail above, brings into question all of Mr. Schwinn and Mr. Bragg's entries and justifies an across the board percentage cut from the hours they each seek***.  (*Kirsch*, *supra*, 148 F.3d at 173 (cited in *Savino*, *supra*, 71 F.Supp.2d at 173); see also *Ferland*, *supra*, 244 F.3d at 1150-51 [flat percentage reduction of fee request permissible if based on expressed reasons].)  Given the overhead hours that are "charged," the hours submitted that represent time communicating between co-counsel, the administrative hours included in the request, and the bizarre entries not applicable to this case, an

across-the-board percentage cut of 15%, not including any reductions for excessive billings or lack of success.

## IV.   THE $465 AND $325 HOURLY RATES SOUGHT ARE NOT THE REASONABLE MARKET RATE FOR SIMILAR SERVICES

### A.   The Determination of a Reasonable Fee Is Linked to the Facts and Circumstances of the Underlying Litigation.

"[T]he concept of reasonableness – the statutory centerpiece of the [FDCPA] fee award – itself implies that the fee calculation is inextricably linked to the facts and circumstances of the underlying litigation." (*Carroll v. Wolpoff & Abramson* (4th Cir. 1995) 53 F.3d 626, 628-629.) "It should e clear, then, that [the FDCPA] does not mandate a fee award in the lodestar amount. If the concept of [the court having] discretion is to have any meaning at all, it must encompass the ability to depart from the lodestar in appropriate circumstances." (*Id.* at 629.) There, the Court of Appeals concluded that the District Court's reduction of the $9,7883.63 attorneys' fees requested to $500 (in an FDCPA case) was <u>not</u> an abuse of discretion. (*Ibid.*)

A party Seeking an Award of Attorneys' Fees Bears the Burden of Submitting Competent Evidence Supporting the Hours Worked and the Rates Claimed. (*Webb v. Board of Educ.* (1985) 471 U.S. 234, 242.) The Burden is on the Plaintiff to Demonstrate that the Requested Hourly Rate is in Line with Those Rates Prevailing in the Community (or Similar Services, by Lawyers of Reasonably Comparable Skill, Experience, and Reputation. (*Guam Soc. of Obstetricians & Gynecologists v. ADA* (9th Cir. 1996) 100 F.3d 691, 696.) The Reasonable Market Rate for the Legal Services Provided Is No More than $250 for Plaintiff's Counsel.

In reviewing fee awards in FDCPA cases, courts routinely analyze the reasonableness of the fee requested based on a review of the amount of litigation activity in the case, and the complexity of the case, as well as the actual result. (<u>See, e.g.</u>, *Altergott v. Modern Collection Techs., Inc.* (N.D. Ill. 1994) 864 F.Supp. 778, 781-783.) In that most FDCPA cases are rarely complex, this approach has much to recommend it.

### 1.   Using the Altergott Analysis, Plaintiff's Request is Unjustified.

In *Altergott, supra,* an FDCPA case, the plaintiff sought an award of over $9,000 in attorneys'

-12-

1   fees. The plaintiff drafted and filed the action, conducted discovery, prosecuted two motions for

2   summary judgment, and opposed the defendants' motion for summary judgment. The plaintiff's

3   counsel also reduced their fee request by 25% of the actual fees incurred because of the mixed results

4   obtained on the motions for summary judgment. Plaintiff's counsel sought recover of 95 total hours

5   incurred between one partner, two associates, and two paralegals during the prosecution of the

6   litigation. As noted, in addition to bringing two motions for summary judgment and opposing one,

7   counsel propounded discovery, brought a motion to amend the complaint and amended the complaint,

8   drafted a protective order, moved to compel discovery, and defended the plaintiff's deposition. Daniel

9   Edelman, a nationally recognized FDCPA plaintiff's attorney and the partner in charge of the case,

10   requested attorneys' fees at an hourly rate of $275. (*Id.* at 781-82.)

11       The District Court carefully reviewed the tasks performed by each of the billing individuals.

12   The court characterized the rate charged by Mr. Edelman as an "excessive" rate and cut his hours by

13   two-thirds. After reviewing the remaining time, the court cut the 95 total hours to 40 hours,

14   concluding that a proper lodestar figure was $5,080. The court then cut the lodestar figure by 50% for

15   reasons inapplicable to this case. (*Id.* at 782-83.)

16       By comparison, in the instant case, Plaintiff's two main counsel, Mr. Schwinn and Mr. Bragg,

17   performed the following tasks and sought an hourly billing rate of $325-465: (1) filed a form

18   complaint, the identical template of which Plaintiff's counsel had used previously in other FDCPA

19   cases; (2) prepared one set of previously drafted written discovery used in other cases,; (3) prepared –

20   but did not file – one Application for Compliance with Subpoena; and (4) prepared a standard,

21   boilerplate Motion for Class Certification.

22       Far less litigation activity occurred here than in *Altergott*. Moreover, the hourly rate of $275

23   for a nationally recognized attorney (Edelman) was characterized as "excessive." Under the *Altergott*

24   Court's reasoning, this Court should award some amount less than half of Plaintiff counsel's request,

25   or about $6,000.

26       **2.    Using the Savino Court Analysis, an Award of Less Than $6,000 Is Reasonable and**

27             **Justified.**

28       In *Savino v. Computer Credit, Inc.* (E.D.N.Y. 1999) 71 F.Supp.2d 173, another FDCPA case,

the Court extensively analyzed the fee request submitted by plaintiff's counsel.  The plaintiff's counsel sought over $34,000 for litigation that included (1) drafting and filing the complaint, (2) prosecuting motions, including a motion for summary judgment; (3) opposing a sanctions motion, (4) conducting written discovery, and (5) participating in a deposition.  The Court concluded that the $34,000 fee request was not only unreasonable, but grossly excessive.  The Court explained, again in language equally applicable here:

> Here, the plaintiff's attorney has submitted a request for fees indicating roughly 187 hours spent in pursuit of the initial litigation ... . [The Court] considers that amount of time to be totally unreasonable, and grossly excessive.  Having presided over this case from beginning to end, the Court is well aware that this was a fairly simple case, necessitating, in the court's view, a minimal factual development.  The case involved a single, unremarkable legal issue – whether the August 14, 1995 letter, which demanded immediate payment, complied with the specific statutory requirements of the FDCPA.  In light of the simplicity of this case the court finds that the actual hours that Plaintiff's counsel allegedly spent on this case were excessive, and must be reduced before the lodestar figure can be properly calculated ... .  Given the simplicity and routine nature of the issues that were eventually presented to the Court, the Court finds that the vast bulk of these hours were excessive and should not be considered in the lodestar calculation.

(*Id.* at 176 (internal quotes omitted) (citations omitted).)

The *Savino* Court concluded:

> In the Court's estimate, based on both its experience and review of similar cases in other jurisdictions, a reasonable attorney could have accomplished the same results as the Plaintiff's counsel by investing roughly 20 hours of work.  Initial client intake, preliminary research, and the drafting of a simple FDCPA complaint should have taken no more than three hours.  Since the sole issue to be tried was whether, as a matter of law, the August 14,1995 letter complied with the requirements of the FDCP A, discovery in this case merely involved production of the letter and interrogatories or a short deposition establishing when and if the Plaintiff received it.  These tasks could easily have been completed by a reasonable attorney with another three hours of effort.  Indeed, the time sheets submitted by the Plaintiff's attorneys suggest that, other than a three hour deposition of the Plaintiff, no other significant discovery was conducted.
>
> Further, the single legal issue involved was not a complex one, and because the Plaintiff's counsel is highly experienced in FDCPA cases, the Court estimates that research and briefing of the summary judgment motion could have been completed in approximately ten hours.  An additional four hours would be appropriate for miscellaneous correspondence, court conferences, and other tasks. All told, this Court estimates that a reasonable, experienced attorney in this field could have obtained the results achieved by the Plaintiff with 20 hours of work.

-14-

1    (*Id.* at 176-77 (emphasis added).)

2    Ultimately, the Court awarded the plaintiff's counsel fees of $3,675, rather than the $34,000

3    requested. (Compare *Mares v. Credit Bureau of Raton* (10th Cir. 1986) 801 F.2d 1197, 1202 [affirming

4    the district court's finding that the FDCPA claim that was "vigorously" litigated and culminated in a

5    short trial could have been accomplished in 70 hours of attorney time]; with *Shapiro v. Credit*

6    *Protection Association, Inc.* (S.D.N.Y. 1999) 53 F.Supp.2d 626, 628 [holding 3 hours at $175 per hour

7    reasonable for filing an FDCPA complaint, attending a pre-trial conference, accepting a settlement

8    offer, and making a motion for fees].)

9    In the instant case, Plaintiff's attorneys seek an award of over 75 total hours to prosecute this

10   simple action.   But even a casual perusal of the court file demonstrates that the aforementioned

11   litigation activity could have been completed in significantly fewer hours than claimed by Plaintiff's

12   counsel, without the duplication of effort.   Defendants submit that as in *Savino*, this was a simple case

13   which could have been resolved in less than 10 hours if prosecuted efficiently, and certainly less than

14   20 hours, even giving counsel every benefit of the doubt.

15   ### 3.   The Requested Rates of $465 and $325 Are Not Reasonable and Must Be Reduced
16   to No More Than $275 per Hour.

17   In *In re Martinez* (S.D. Fla. Bkrptcy 2001) 266 B.R. 523, an FDCPA case, the court

18   summarized its analysis as follows:

19   > A reasonable hourly rate is the prevailing market rate in the relevant
20   > legal community (or similar services by lawyers of reasonably
     > comparable skills, experience, and reputation."   The United States
     > Supreme Court has stated that the determination of "an appropriate
21   > 'market rate' for the services of a lawyer is inherently difficult."   "The
     > party seeking attorney's fees bears the burden of producing satisfactory
22   > evidence that the requested rate is in line with the prevailing market
     > rates."   "A court, however, is itself an expert on the question and may
23   > consider its own knowledge and experience concerning reasonable and
     > proper fees and may form an independent judgment either with or
24   > without the aid of witnesses as to value."

25   (*Id.* at 542 (citations omitted) (emphasis added).)

26   In *In re Martinez*, the court found that $200 an hour was an appropriate hourly rate for a non-

27   complex case in Florida.   (*Id.*; see also *Yahoo!, Inc. v. Net Games, Inc.* (N.D. Cal. 2004) 329 F. Supp.

28   2d 1179, 1188-92 [a reasonable hourly rate for a San Francisco area attorney in a non-complex case is

-15-

$190]; *Clark v. Quick Collect, Inc.* (D. Ore. 2006) 2006 WL 572157, *2 [awarding $250 per hour in a non-complex FDCPA action]; *Sparkman v. Zwicker & Associates, P.C.* (E.D.N.Y. 2006) 2006 WL 463939, *2 [collecting cases and determining $200 per hour is a reasonable rate in the Eastern District of New York]; *Cornett*, *supra*, 2006 WL 2270346, at *2 [collecting cases and deciding that the reasonable market rate in a non-complex FDCPA case out of the Western District of New York is $200 per hour, after rejecting plaintiff's request for $260 per hour]; *Maddox v. Martin Co., LLC* (S.D. Ohio 2006) 2006 WL 1735394, *1 [awarding an hourly rate of $150 per hour in a non-complex action]; *Dowling v. Kucker, Kraus & Bruh, LLP* (S.D.N.Y. 2005) 2005 WL 1337442, *8 [holding $200 to be a reasonable hourly rate in FDCPA cases for experienced attorneys in Manhattan]; *Cooper v. Sunshine Recoveries, Inc.* (S.D.N.Y. 2001) 2001 WL 740765, *12 [noting that "[r]ecent cases in New York City have awarded fees in FDCPA cases at rates of $175 and $200 per hour," citing cases, and holding that a reasonable hourly rate is $200]; *Hagan v. MRS Assocs.* (E.D. La. 2001) 2001 WL 531119, *10 fn.11 [collecting recent FDCPA cases which awarded attorneys' fees at an hourly rate of $200 or less].)

Although these cases are throughout the nation, it provides some circumstantial evidence of (1) the complexity of FDCPA cases, and (2) the proper market rate in the Northern District of California given the rates used in jurisdictions with similar rates, such as New York. (Coleman Decl., ¶21(b).) Therefore, the appropriate rate is in the neighborhood of $275 per hour for Mr. Bragg and Mr. Schwinn.

### 4. The Reasonable Market Rate Should Be Determined by the Complexity of the Specific Case, the Legal Services Provided, and the Outcome of the Case.

As noted above, in demonstrating the reasonableness of a requested rate, "the burden is on the fee applicant to produce satisfactory evidence … that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." (*Blum*, *supra*, 465 U.S. at 896, n. 11.) In fee petition cases, counsel who are not paid on an hourly basis are essentially free to ask for any hourly rate they desire. The rate is not tested as it would be in the usual marketplace by what a paying client would be willing to pay. To prevent abuses by counsel seeking unreasonable attorneys' fees, it is thus necessary for the courts to consider the hourly rates of other attorneys in the California marketplace, and other similar

1   marketplaces, for some rough guidance.

2       Magistrate Judge Brazil set forth an extremely well-reasoned analysis regarding the factors to

3   consider in determining the reasonable market rate for legal services in his Findings and

4   Recommendations Re Attorneys' Fees in *Finkelstein v. Bergna* (N.D. Cal. 1992) 804 F.Supp. 1235.

5   First, Magistrate Judge Brazil explained that there are "three interlocking elements [to] consider in

6   determining the reasonableness of the requested rate: (1) the prevailing rate (2) for similar services (3)

7   by lawyers of reasonably comparable skill, experience, and reputation. (*Id*. at 1242.) Magistrate Judge

8   Brazil then analyzed the "prevailing rate" factor:

9               [T]the concept of "similar services" has more than one dimension, but
10              one of those dimensions is exposed by the observation that, before we
                can think reliably about what rates are "prevailing," we must ask:
11              prevailing where? And the "here" (within a given geographic area) could
                be defined variously by subject matter of litigation and/or by the level of
12              complexity and/or magnitude/value of the interests at stake. In other
                words, by what criteria should we identify the relevant market?

13  (*Id*. at 1243.)

14      To answer these questions, Magistrate Judge Brazil examined the public policy underlying fee-

15  shifting statutes in civil rights litigation, which are similar to consumer protection public policy,

16  although a greater constitutional seriousness. Magistrate Brazil wrote, in relevant part, that:

17              [I]n defining the relevant market courts should pay considerable
                attention to the level of complexity of the case and to the magnitude of
18              the interests implicated in it. We find unrealistic the implicit suggestion
                (or assumption) ... that the universe of civil rights cases is monolithic,
19              that all ... cases reflect the same level of complexity and implicate
                interests of the same importance. Rather, from first hand experience on
20              the bench we know that civil rights cases [as well as other types of cases]
                cover a wide range of complexity, some are quite simple, some as dense
21              (conceptually and factually) as virtually any kind of litigation that
                surfaces in federal court. To ignore that reality would risk ... overpaying
22              lawyers who take on simple civil rights cases, creating an unjustifiable
                windfall.
23
                We believe that the [correct] approach ... focuses primarily on the
24              relative complexity of the case in which fees are sought and looks to
                hourly rates for cases of roughly comparable complexity across the full
25              spectrum of case types in federal court litigation .... [This approach]
                reduces the conceptual and evidentiary difficulties created by the fact
26              that for at least some kinds of civil rights cases there is no real "market,"
                meaning that the plaintiffs don't really pay the attorneys, and the
27              attorneys don't really "compete" (at least as that term would be used in a
                capitalist economic model) to be hired by the plaintiffs ... . These facts so
28              distort the "economics" of civil rights litigation [and all litigation based

on fee-shifting statutes] that it is quite misleading to suggest that there are meaningful market ... .

(*Id.* at 1243-45 (emphasis added).)

Based on this analysis, Magistrate Judge Brazil concluded:

> For all these reasons, we conclude that the appropriate way to identify the relevant market, or sphere of reference, is to begin by assessing the relative complexity of the case at bar, to consider the magnitude of the interests implicated in it, and then to determine what rates generally are paid to civil litigators in federal court in cases of roughly comparable complexity and significance, regardless of case type.

(*Id.* at 1245 (emphasis added).)

Judge Samuel Conti of this District Court's bench found that Mr. Bragg and another co-counsel sought excessive fees in a case with little litigation and which was duplicative of other cases litigated by Mr. Bragg, similar to this case.  In this FDCPA case, Judge Conti explained:

> In the matter at hand, there is no prevailing market rate because the work that Plaintiff's counsel does is typically compensated through recovery of attorneys' fees, as here.  Therefore, the Court will look to other cases involving attorneys' fees recovered pursuant to the FDCPA.  Plaintiff would have the Court rely on *Defenbaugh v. JBC & Assocs* .... an unreported case in this District.  In *Defenbaugh*, the same attorneys who represented Plaintiff here represented a different plaintiff in a similar action that terminated with a similar settlement. ... Notwithstanding the outcome of *Defenbaugh*, recently reported case law from a variety of jurisdictions strongly suggests that these amounts are outside the range of market rates in the Northern District.  See, e.g., *Pinkham v. Prof'l Claims Bureau, Inc.*, 367 F. Supp.2d 338 (E.D.N. Y. 2005) (holding that $250 per hour 2 was reasonable in an FDCPA case); *Owens v. Howe*, 365 F.Supp.2d 942, 948 (N.D. Ind. 2005) (holding that $225 per hour was reasonable in an FDCPA case); *Mann v. Acclaim Fin. Services Inc.*, 348 F.Supp.2d 923 (S.D. Ohio 2004) (holding that $200 per hour was reasonable in an FDCPA case).  The Court recognizes that rates for legal work in San Francisco tend to be at the high end of  national averages.  Therefore, the Court finds that the highest rate cited above, $250, is appropriate for both of Plaintiffs attorneys.

(*Johnson*, *supra*, 2005 WL 2401890, *4 [also cutting hours across the board because the declarations submitted by plaintiff's counsel (Mr. Bragg) lacked credibility] (hourly rate affirmed on appeal, 2007 WL 3332813, *9-11) (some citations omitted).)

It may be conceded that FDCPA litigation may be as complex, factually, legally, and procedurally, as almost any other case litigated in federal court.  But the instant case was not such

-18-

litigation.  Indeed, it is hard to even characterize it as "litigation" using Magistrate Brazil's analysis.  Under the circumstances of this case, the award should be a small fraction of the nearly $26,000 requested.

### 5.  Plaintiff's Counsel's Own Declarations Fail to Provide Competent Support for Their Requested Hourly Rates.

As noted, objective, satisfactory, and competent evidence is necessary to support an hourly rate requested.  In *Hopwood v. State of Texas* (5th Cir. 2000) 236 F.3d 256, the Fifth Circuit Court of Appeal explained:

> It should also be noted that in line with the goal of obtaining objectivity, satisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits.  Testimony that a given fee is reasonable is therefore unsatisfactory evidence of market rate.  See *Hensley*, 461 U.S. at 439 n. 15, 103 S. Ct. at 1167 n. 15.  Evidence of rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence. ...  Hourly rates are to be computed according to the prevailing market rates in the relevant legal market, not the rates that "lions at the bar may command."

(*Id.* at 281 (emphasis added).)

Both Mr. Schwinn and Mr. Bragg appear to conclusorily assert that the $325 and $465 hourly rates they seek, respectively, are reasonable.  Mr. Schwinn states without support that his requested rate of $325 is reasonable and comparable to the rates being charged by attorneys of similar experience and expertise in the San Francisco Bay Area's federal and state courts.  These conclusory attestations as to abstract, reasonable hourly or market rates are simply not evidence.  Rather, they self-servingly give a rate for "class action" attorneys without specifically focusing on what actually occurred in this case.  As Magistrate Judge Brazil properly noted, such "evidence" is meaningless since not all class action cases "reflect the same level of complexity and implicate interests of the same importance." (*Finkelstein*, *supra*, 804 F.Supp. at 1243.)

### a.  Mr. Schwinn's Declaration Cites to Cases Where There Was No Opposition to His Requested Rate.

Mr. Schwinn cites to 26 cases in support of his $325 rate.  However, only one of the 26 cases cited was a federal case.  There, in *Owens v. Erica Brachfeld, APC*, Mr. Schwinn's motion was unopposed.  Mr. Schwinn thereafter cites to 10 federal cases where he was awarded a rate of $300.

1  Out of those 10 cases, only two were opposed – the remainder were unopposed or resulted from default

2  judgment.  In the two cases where there was an opposition, the courts took issue with the number of

3  hours requested by Mr. Schwinn.  (*Wallat v. Roush*, case no. 05-cv-03518-JF, September 21, 2008, slip

4  op., *Tong*, *supra*, 2008 WL 171035 at *1-2.)   And in one of those contested cases, the Court

5  specifically said its order could not be cited.

6       Nevertheless, the great weight of authority cited between Mr. Schwinn and Mr. Bragg weighs

7  heavily in favor of this considerably lower rate.  Therefore, should the Court not grant Defendants'

8  requested rate of $275, the Court should cap the rate at $300.

9               **b.    Mr. Bragg's Declaration Does Not Cite to Evidence Which Supports His**
              **Requested Rate.**
10

11      Mr. Bragg cited to the *Palmer* decision in support of his claim that $465 is a fair and reasonable

12  hourly rate.  There, the settlement agreement included a cap on fees.  While Mr. Bragg's claimed fees

13  well exceeded the cap, ultimately his motion for fees requested an amount of fees that was precisely at

14  the capped amount.  Because the defendants had already stipulated to pay up to the capped amount,

15  Mr. Bragg's motion for fees went unopposed.  The *Palmer* Court granted Mr. Bragg's requested award

16  of $52,000; based on approximately 220 claimed hours; the effective hourly rate approved by the Court

17  was approximately $235 per hour.  (See *Palmer v. Far West* (N.D. Cal. 2008) 2008 WL 5397140, *1

18  [awarding $52,000 in fees for approximately 220 hours on an unopposed motion with a capped fee

19  amount]; see also *Campos v. Western Dental Services, Inc.* (N.D. Cal. 2007) 2007 WL 2050976, *1

20  [awarding $52,500 in fees for approximately 186 hours on an unopposed motion with a capped fee

21  amount].)

22      Courts have held that orders on unopposed motions granting attorneys' fees have little or no

23  precedential or evidentiary value.  (See *In re Quantum Health Resources, Inc.* (C.D. Cal. 1997) 962

24  F.Supp. 1254, 1256.)   However, to the extent that these two cases cited by Plaintiff have any

25  evidentiary value, they support a fee in the range of $250-$275 per hour.

26              **c.    The Defenbaugh v. JBC & Assocs. Case Does Not Provide Guidance as to**
             **the Reasonable Market Rate.**
27

28      Mr. Bragg cited to the *Defenbaugh* decision.  The *Defenbaugh* Court relied on inadmissible

-20-

1  evidence to support its conclusion - even evidence which has no probative value. The *Defenbaugh*

2  Court relied upon four pieces of evidence: (1) The plaintiffs' attorneys own declarations - mirroring

3  the declarations in this case, which have been discussed above, (2) the uncontested *Irwin* order

4  awarding attorneys' fees in the amount remaining from the settlement funds, like the *Campos* and

5  *Palmer* cases discussed above (3) declarations from James Sturdevant and Mark Chavez, and (4)

6  *Hearn v. Barnhart* (N.D. Cal. 2003) 262 F.Supp.2d 1033, a factually distinguishable case. (See

7  Coleman Decl., ¶36 [Irwin case factually distinguishable for purposes of determining reasonable

8  hourly market rate for legal services provided]; *Finkelstein*, *supra*, 804 F.Supp. at 1243 (attorney not

9  entitled to a higher hourly rate simply because, ip*so facto*, the attorney was awarded a high hourly rate

10  in an entirely different, factually distinguishable case].) Magistrate Judge Brazil in the *Finkelstein*

11  case, *supra*, 804 F.Supp. at 1246, concluded:

12  
> Absent clear proof to the contrary (which plaintiff has not provided), we
13  > must infer that fee paying clients simply would not tolerate being
> charged a premium rate (or work done by a senior lawyer that could be
> done on a much more cost-effective basis by less senior and less pricey
14  > counsel.

15  (*Id.* at 1246 (emphasis added).)

16  The declarations from Chavez and Sturdevant in the *Defenbaugh* matter[4] demonstrated that

17  they will support any hourly rate for plaintiff's counsel, which they, in turn, offer to use to support

18  their own fee applications. In effect, these mutually supporting declarations create something

19  analogous to a "kiting" scheme wherein with each new case, higher fees are requested based upon

20  earlier fee declarations and awards.

21  But more problematic, these declarants provided no analysis or justification for seeking these

22  extremely high rates. (See *Finkelstein*, *supra*, 804 F.Supp. at 1243, 1246.) Moreover, none of the

23  declarants indicated any hourly rates for FDCPA litigation or similarly non-complex litigation that

24  they were paid or were awarded by a court during their careers. Nor did any of the declarants discuss

25  any hourly rates paid to any other San Francisco attorneys or any class action attorneys for this kind of

26  simplistic case. The declarants "experience and expertise" are "equal to or greater than the requested

27  _____

28  [4] Indeed, Mr. Sturdevant and Mr. Chavez have repeatedly provided such self-serving declarations.
(See *Finkelstein*, *supra*, 804 F.Supp. at 1246.)

1    rates."   Both provided an impressive list of complicated lawsuits involving certified class actions.

2    However, those actions are factually distinguishable from the procedurally and factually simple

3    *Defenbaugh* case, and even more so, <u>this</u> case.

4         The Ninth Circuit has rejected such evidence because it does not establish the reasonable

5    market rate for "similar legal services" provided in the specific case, and therefore did "not establish

6    the prevailing market rate." (*Widrig v. Apfel* (9th Cir. 1998) 140 F.3d 1207, 1210; <u>see also</u> *Finkelstein*,

7    *supra*, 804 F.Supp. at 1246 ["Because an award of attorneys' fees ... must be based on prevailing

8    market rates, and because plaintiff has failed to demonstrate that the market could bear a rate of $300

9    per hour for most of the work performed on one complex case, we must reject [the] requested rate as

10   not being reasonable."](emphasis added); <u>accord</u> *Jordan v. Multnomah* County (9th Cir. 1987) 815 F.2d

11   1258, 1264 fn.9.)   Simply put, the declarations of Chavez, and Sturdevant  in the *Defenbaugh* case do

12   not provide relevant evidence, and, instead, lack foundation to support their conclusory statements.

13   (<u>See</u> *Finkelstein*, *supra*, 804 F.Supp. at 1243.)   Thus, they are not relevant to the instant fee motion.

14        The *Defenbaugh* Magistrate Judge also relied upon *Hearn v. Barnhart* (N.D. Cal. 2003) 262

15   F.Supp.2d 1033, a social security benefits case, to support the fee award.   But that case is also factually

16   and procedurally distinguishable from the case at bar.   Under the Social Security Act, attorneys' fees

17   are recoverable from the benefits obtained up to a maximum of 25%.   In analyzing the *Hearn* fee

18   petition, the District Court there noted that the case was very complicated and involved substantial risk

19   because the claim had already been rejected at several levels of agency review.   (*Id*. at 1036-37.)

20   The District Court also noted that the ultimate recovery was significantly greater than the past due

21   benefits on which the fund percentage calculation was based because the recovery included future

22   benefits as well.   (*Id*. at 1037.)   And finally, the District Court noted that the fee request was

23   unopposed by the plaintiff before approving a fee that resulted in an hourly rate of $450 per hour.   (*Id*.

24   at 1038.)   These facts are distinguishable from the simple *Silva* case at bar.   First, the *Hearn* Court

25   noted that courts are deferential to fee requests based on a percentage recovery methodology in the

26   social security benefits arena, often accepting overly inflated hourly rates.   (*Id*. at 1037.)   Moreover,

27   the rate there was deemed justified given the extreme complexity of the case and the high risk

28   involved.   In contrast, the case at bar was not overly complex.   Frankly, it is only considered

-22-

"complex" by virtue of the fact that a very simple class action was certified. In light of these factual and procedural differences, the *Hearn* case fails to support Plaintiff's current fee petition. (See *Finkelstein*, *supra*, 804 F.Supp. at 1243.)

### 6.   The Only Relevant, Competent Evidence Proferred Establishes That the Reasonable Market Rate for This Case Is in the Range of $250-$275 Per Hour.

The only direct evidence of reasonable market rates billed and paid in this case and in the San Francisco market is Ms. Coleman's Declaration. (Coleman Decl., ¶¶2-10, 21-31.) Circumstantially, the Court has the various FDCPA cases indentified in this opposition brief which had awarded fees through the country in the $200-300 range. While some of the cases are not geographically located in a legal community similar to San Francisco (*In re Martinez*, *supra*, 266 B.R. at 542 [$200 billing rate is reasonable]; see *Hagan*, *supra*, 2001 WL 531119 at *10, fn. 11 [collecting recent FDCPA cases which awarded attorneys' fees at an hourly rate of $200 or less]). Likewise, in *Yahoo!, Inc.*, *supra*, 329 F. Supp.2d at 1188-1192, the Court found a reasonable hourly rate for a San Francisco area attorney is $190 an hour. While this rate is low for the market rate in 2010, it is certainly circumstantial evidence to support Defendants' requested rate of $250-$275 per hour.

## V.   CONCLUSION

In this FDCPA case that was settled without a single contested court appearance, attorneys' fees in excess of the $250-$275 range evidences the "economic waste" inherent in continuing to prosecute a case for the sake of attorneys' fees and little else. Defendants respectfully submit that in reaching a determination as to the reasonable market rate to be used in the lodestar calculation, the District Court must consider the nature of the instant case and the similarity of the legal services provided. (See *Widrig*, *supra*, 140 F.3d at 1210; accord *Jordan*, *supra*, 815 F.2d at 1262-63, 1264 fn.9; *Finkelstein*, *supra*, 804 F.Supp. at 1243.)

Under the circumstance of this case, the best evidence of a reasonable market rate is the rate actually billed and paid in similar cases. Ms. Coleman's declaration provides the only direct evidence of an hourly rate that was billed and paid for similar work in this case. This evidence is supported by judicial opinions in other FDCPA cases regarding the appropriate hourly rate for these types of cases. (See, e.g., *Cooper*, *supra*, 2001 WL 740765 at *12 [noting that "[r]ecent cases in New York City have

-23-

awarded fees in FDCPA cases at rates of $175 and $200 per hour," citing cases, and holding that a reasonably hourly rate is $200]; *Hagan, supra*, 2001 WL 531119 at *10 fn.11 [collecting recent FDCPA cases which awarded attorneys' fees at an hourly rate of $200 or less].)

Under these circumstances, Defendants submit that a reasonable market rate is in the range of $250-$275 per hour.  Assuming that the Court reduces the hours as proposed by Defendants, then a reasonable fee would be as follows:

| Person | Requested Hours | Reduction | Subtotal of Hours | Rate | Fee |
|---|---|---|---|---|---|
| Mr. Bragg | 24.6 | 5.4 | 19.2 | $275 | $ 5,280.00 |
| Mr. Schwinn | 38.0 | 8.5 | 30 | $275 | $ 8,250.00 |
| Mr. Roulston | 4.3 | 1.8 | 2.5 | $200 | $   500.00 |
| Paralegal | .3 | | .3 | $85[5] | $     25.50 |
| Subtotal Prior to Further Reductions: | | | | | $14,055.50 |
| Less 10% Reduction for Administrative Hours, Duplicative Hours, Hours Not Associated with Case | | | | | -$ 1,405.55 |
| Subtotal Prior to Reduction for Lack of Success | | | | | $12,649.95 |
| Less 70% Reduction for Lack of Success | | | | | -$ 8,854.97 |
| **Fee Award** | | | | | **$  3,794.99** |

Furthermore, Mr. Bragg seeks a $210.00 filing fee, presumably for filing the *pro hac vice* reimbursed for in-house copying, which must be excluded because Plaintiff has failed to satisfy her burden of establishing the reasonableness of these charges. (See *Defenbaugh v. JBC & Assocs, Inc.* (N.D. Cal. 2004) 2004 WL 1874978, *13; see also *Ilick v. Miller* (D. Nev. 1999) 68 F.Supp.2d 1169, 25 1182.)

////

////

////

////

---

[5] If the Court decides to award fees for the paralegal, the appropriate hourly rate is $75-85 per hour. (Coleman Decl., ¶¶25-30; *Defenbaugh, supra*, 2004 WL 1874978, at *7.)

1    Defendants respectfully submit that given the circumstances of this case, as detailed above, the

2  fee awarded by the Court should be no greater than $3,794.99 plus the filing fee of $350.

3  Dated: April 12, 2010

4                                    ELLIS, COLEMAN, POIRIER, LAVOIE, &
                                     STEINHEIMER LLP
5

6                                    By   /s/  Jennifer S. Gregory                    
                                         Jennifer S. Gregory
7                                        Attorneys for Defendants
                                         PATENAUDE & FELIX and RAYMOND ALCIDE
8                                        PATENAUDE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-25-